Steven W. COLEMAN, et al., Plaintiffs,

v.

Ray PARRA, et al., Defendants.

No. C–3–99–383.

United States District Court,
S.D. Ohio,
Western Division.

Nov. 3, 2000.

Jay B. Carter, Charles Smiley & Associates, Dayton, OH, David J. Fierst, Dayton, OH, for Steven W. Coleman.

David J. Fierst, Dayton, OH, for Janet Coleman.

Charles K. Eldered, Texas Atty. General's Office, Austin, TX, for Ray Parra, John Claymon.

Dawn M. Tarka, Ohio Atty. Gen. Correction Litigation Section, Cleveland, OH, John H. Jones, Ohio Atty. Gen. Corrections Litigation, Columbus, OH, for Wanda Deardurff, Gail Price, State of Texas.

DECISION AND ENTRY SUSTAIN-
ING IN PART AND OVERRUL-
ING IN PART, AS MOOT, OHIO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC.
# 33); PLAINTIFFS' MOTION
FOR RECONSIDERATION (DOC.
# 38) OVERRULED; JUDGMENT
TO BE ENTERED IN FAVOR OF
DEFENDANTS AND AGAINST
PLAINTIFFS; TERMINATION
ENTRY.

RICE, Chief Judge.

This matter comes before the Court upon two Motions. *First*, Defendants Gail Price and Wanda Deardurff have filed a Motion for Summary Judgment (Doc. # 33) on· Plaintiff Steven Coleman's 42 U.S.C. § 1983 claim against them in their individual capacity.[1] *Second*, Plaintiffs Steven and Janet Coleman have filed a Motion for Reconsideration (Doc. # 38) of the Court's July 24, 2000, Decision and Entry (Doc. # 37) dismissing Defendants Ray Parra and John Claymon for lack of personal jurisdiction. After setting forth the pertinent facts underlying this litiga-tion, the Court will resolve the Ohio Defen-dants' Motion for Summary Judgment. The Court then will turn to the Plaintiffs' Motion for Reconsideration.

**1.** The Motion for Summary Judgment was filed by Price, Deardurff and the Ohio Depart-ment of Rehabilitation and Correction ("ODRC"). In a July 24, 2000, Decision and Entry (Doc. # 36), however, the Court dis-missed the ODRC on the basis of Eleventh Amendment immunity. Although the pending Motion for Summary Judgment addresses a number of claims and issues, only Steven Coleman's § 1983 claim against Price and Deardurff, in their individual capacity, re-mains viable in this litigation. (*See* Doc. # 36 at 8). Among other things, the Court previ-ously dismissed a consortium claim by Plain-tiff Janet Coleman. (*Id.* at 4–5). Consequent-ly, the Court will address only the § 1983 aspect of the Motion for Summary Judgment,

*I. Factual Background* [2]

In 1997, Plaintiff Steven Coleman was under the supervision of Defendant Wanda Deardurff, a parole officer with the Ohio Adult Parole Authority ("OAPA"). (Dear-durff affidavit, attached to Doc. # 33 at Exh. A). Prior to that time, he had been released from a Texas prison, and respon-sibility for his parole supervision had been transferred to the State of Ohio, pursuant to the Interstate Compact for the Supervi-sion of Parolees and Probationers ("Inter-state Compact"). (*Id.*).

On July 30, 1997, a Kettering, Ohio, detective contacted the Dayton office of the OAPA about an allegation that Cole-man had smoked marijuana and had com-mitted a rape. Shortly thereafter, Dear-durff spoke to the alleged victim, who confirmed the detective's information and agreed to testify at a probable cause hearing. (*Id*). On August 19, 1997, Deardurff arrested Coleman for violating the conditions of his parole by engaging in non-consensual sexual intercourse and smoking marijuana. (*Id.*). On August 22, 1997, she served Coleman with notice that the State of Ohio had scheduled a proba-ble cause hearing for September 3, 1997. (*Id.*).

and it will refer only to Steven Coleman when discussing that Motion.

**2.** For purposes of ruling on the pending Mo-tion for Summary Judgment, the Court will construe the facts, and all reasonable infer-ences drawn therefrom, in a light most favor-able to Steven Coleman, who is the non-moving party. Although the Court ordinarily does not cite a defendant's evidentiary materi-als when ruling on a summary judgment mo-tion, the Court must do so in the present case, because Steven Coleman has not controverted the material facts set forth in the affidavits and deposition testimony quoted in support of Deardurff's and Price's Motion for Summary Judgment.

Deardurff subsequently presented evidence of the alleged parole violations at the September 3, 1997, hearing, which Coleman attended with counsel. (*Id.*). The hearing was reconvened on September 16, 1997, for the presentation of additional evidence. (*Id.*). Once again, Coleman appeared for the hearing with counsel. (*Id.*). After the presentation of evidence, a hearing officer found probable cause to believe that Coleman had violated the conditions of his parole by engaging in non-consensual sexual intercourse and smoking marijuana. (*Id.*).

Thereafter, on September 22, 1997, Deardurff dictated a report, recommending Coleman's return to the State of Texas for a final parole revocation hearing. (*Id.*). Deardurff's report was transmitted to the Ohio Interstate Compact office, where Defendant Gail Price was employed as a deputy compact administrator, on September 23, 1997. (*Id.*). The Ohio Interstate Compact office forwarded a copy of the report to the Texas Interstate Compact office on September 30, 1997. (Price affidavit, attached to Doc. # 33 at Exh. B). Subsequently, on October 7, 1997, the Ohio Interstate Compact office forwarded additional materials to the Texas Interstate Compact office and also requested a warrant for Coleman's return to Texas. (*Id.*).

On December 11, 1997, Coleman was released from the Montgomery County Jail, where he had remained incarcerated. (Deardurff affidavit, attached to Doc. # 33 at Exh. A). Coleman's release was ordered by the Montgomery County Common Pleas Court after Texas officials failed to pick him up. (Duibley depo. at 24). Shortly after Coleman's release from jail, Texas officials informed Deardurff that the State of Texas had issued a "pre-revocation warrant" on November 11, 1997. (Deardurff affidavit, attached to Doc. # 33 at Exh. A). After receiving this information, Deardurff consulted her supervisor and continued to monitor Coleman, but she did not re-arrest him. (*Id.*).

On January 15, 1999, the Texas Parole Board took action to return Coleman from Ohio for a revocation hearing. (Claymon depo. at 27–28). On February 2, 1999, the Dayton office of the OAPA received notice that the State of Texas had decided to extradite Coleman. (Deardurff affidavit, attached to Doc. # 33 at Exh. A). Thereafter, on February 15, 1999, Deardurff re-arrested Coleman, and he was transported to the Montgomery County Jail. (*Id.*). At that time, the Ohio Interstate Compact office was informed that Coleman was in custody. (*Id.*). Deardurff also informed the Texas Interstate Compact office that Coleman had been arrested. (*Id.*). On February, 26, 1999, the OAPA's responsibility for supervising Coleman's parole terminated. (*Id.*).

Prior to his return to Texas, however, Coleman was permitted to post bond, and he was released from the Montgomery County Jail on March 12, 1999. (Wagner depo. at 35). On March 25, 1999, Deardurff began supervising Coleman again, and she instructed him to appear for an extradition hearing. (Deardurff affidavit, attached to Doc. # 33 at Exh. A). Thereafter, Coleman was taken into custody on April 13, 1999, and he was picked up by Texas officials on April 22, 1999. (Wagner depo. at 37). The OAPA terminated its supervision over Coleman for the final time on April 28, 1999. (Deardurff affidavit, attached to Doc. # 33 at Exh. A). According to Coleman, the Texas Parole Board subsequently held a revocation hearing on June 17, 1999. (Amended Complaint, Doc. # 17). The hearing officer determined that no parole violations had occurred. (*Id.*). As a result, the State of Texas released Coleman from custody on July 22, 1999. (*Id.*).

## II. *Summary Judgment Standard*

The Court first will set forth the parties' relative burdens once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial[,]" quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 [6th Cir.1987] ). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505

(emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, upon only those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. *Analysis of Motion for Summary Judgment (Doc. # 33)*

Deardurff and Price seek summary judgment on Steven Coleman's 42 U.S.C. § 1983 claim against them in their individual capacity.[3] In support of their Motion, they raise several arguments. *First,* they contend that Coleman has not adequately pled "individual capacity" liability. *Second,* Deardurff and Price argue that they did not deprive Coleman of any constitutional right. *Third,* they assert the defense of qualified immunity, assuming, *arguendo,* that they did violate a constitutional right.

■ With respect to the first issue, the Court cannot agree that Deardurff and Price are entitled to summary judgment on the basis of Coleman's failure to plead an "individual capacity" claim under § 1983. Admittedly, neither the Complaint (Doc. # 1) nor the amended Complaint (Doc. # 17) expressly states the capacity in which Deardurff and Price have been sued. In *Wells v. Brown,* 891 F.2d 591, 593 (6th Cir.1989), the court held that an official capacity suit must be assumed, unless a plaintiff alleges individual capacity in his complaint. In more recent decisions, however, the Sixth Circuit has recognized that the critical question is whether a defendant receives adequate notice of a plaintiff's intent to pursue an individual capacity claim, regardless of whether the complaint expressly alleges individual capacity liability. For example, in *Pelfrey v. Chambers,* 43 F.3d 1034, 1038 (6th Cir. 1995), the court reasoned that defendants had received sufficient notice that they were being sued in their individual capacity, despite the plaintiff's failure to specify that fact in his complaint. The court reached the same conclusion in *Abdur-Rahman v. Michigan Dep't of Corrections,* 65 F.3d 489, 491 (6th Cir.1995). In both cases, the Sixth Circuit reasoned that memoranda and motions filed by the plaintiffs provided adequate notice of the capac-

---

**3.** As noted, *supra,* the pending Motion for Summary Judgment addresses other claims that are no longer viable. Consequently, the Court's analysis herein will focus solely upon the § 1983 claim against Deardurff and Price.

ity in which the defendants had been sued. In addition, the *Pelfrey* court noted that the plaintiff's complaint included allegations that the defendants had acted outside the scope of their employment and in bad faith, thereby suggesting individual capacity liability. Similarly, in *Perry v. Croucher*, 165 F.3d 28, 1998 WL 661151 (6th Cir. August 31, 1998), the court noted that the plaintiff's complaint included allegations of bad faith and willful, malicious and reckless misconduct by the defendants. The *Perry* court also noted that the defendants had moved for dismissal on the basis of qualified immunity, a defense which only applies to "individual capacity" claims. The defendants' invocation of qualified immunity was deemed significant, because it revealed that they had perceived the plaintiff's complaint as alleging individual capacity liability.

■ After reviewing the foregoing case law, the Court concludes that Deardurff and Price received adequate notice of Coleman's intent to pursue an individual capacity § 1983 claim against them, despite his failure to plead such a claim expressly. The Court reaches this conclusion for three reasons. *First*, in addition to Deardurff and Price, Coleman has named the State of Ohio as a Defendant. It is well settled that a suit against Deardurff and Price in their "official capacity" would be nothing more than a suit against their employer, the State of Ohio. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Given that Coleman separately named the State of Ohio as a Defendant, construing his § 1983 claim against Deardurff and Price as an "official capacity" claim would add absolutely nothing to his Complaint. It is unlikely that Coleman intended to name the State of Ohio as a Defendant twice: once directly, and once indirectly by suing Deardurff and Price in their official capacity. *Second*, Coleman's amended Complaint alleges that Deardurff and Price acted maliciously. (Doc. # 17 at ¶ 37). Such an allegation suggests an individual capacity claim. In addition, Coleman's Memorandum (Doc. # 39) itself indicates his intent to seek individual capacity liability. *Third*, Deardurff and Price have raised the defense of qualified immunity, thereby indicating that they personally construed Coleman's amended Complaint as alleging an individual capacity claim under § 1983. For these reasons, the Court concludes that Deardurff and Price are not entitled to summary judgment on the basis of Coleman's failure to plead an individual capacity claim expressly.[4]

■ Having rejected the Movants' first argument, the Court turns now to their assertion that they did not deprive Coleman of any constitutional right. It is well settled that § 1983 creates a cause of action to redress the violation of rights secured by the Constitution or laws of the United States. *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1060 (6th Cir.1998). Absent such a violation, no cognizable claim exists under § 1983. In the present

4. The Court notes that the Sixth Circuit will soon revisit the issue of pleading individual capacity liability under § 1983. In *Moore v. City of Harriman*, 218 F.3d 551 (6th Cir. 2000), a panel of that court relied upon the Sixth Circuit case law cited herein and reversed the district court's dismissal of a § 1983 claim for failure to plead individual capacity liability. On September 12, 2000, the Sixth Circuit vacated the panel's opinion in *Moore* and voted to rehear the case *en banc*. This Court need not await the *en banc* ruling in *Moore*, however. For the reasons set forth more fully, *infra*, Deardurff and Price are entitled to summary judgment on Coleman's § 1983 claim, without respect to the sufficiency or insufficiency of the individual capacity allegations in his amended Complaint.

case, Coleman does not allege that Deardurff or Price violated any right secured by the laws of the United States. The critical issue, then, is whether a genuine issue of material fact exists as to whether either Defendant violated a right secured by the Constitution.

In his amended Complaint, Coleman alleges that Deardurff and Price violated his rights under the Fourth, Fifth, Sixth and Ninth Amendments to the United States Constitution.[5] (Doc. # 17 at ¶ 35). The Court notes, however, that the specific factual basis for these allegations is not entirely clear. In his amended Complaint, Coleman alleges only that Deardurff and Price "took no steps to ensure" that he received a parole hearing in Texas before June 17, 1999. (Doc. # 17 at ¶ 26, 28). The amended Complaint contains no other factual allegations pertaining to either Defendant. Nevertheless, in their Motion for Summary Judgment, Deardurff and Price have attempted to identify a factual basis for the constitutional deprivations alleged by Coleman,[6] and the Court will do likewise.

## A. Fourth Amendment

██ The only conceivable Fourth Amendment issue involves Deardurff's arrest of Coleman. As noted, *supra*, Deardurff arrested Coleman on August 19, 1997, after investigating allegations that he had committed rape and had smoked marijuana, in violation of the conditions of his parole. (Deardurff affidavit, attached

to Doc. # 33 at Exh. A). In light of Deardurff's investigation, which included speaking with the alleged rape victim, she undoubtedly had "reasonable cause" to believe that Coleman had violated the conditions of his parole and to arrest him without a warrant. Under Ohio Rev.Code § 2967.15, parole officers may make a warrantless arrest if they have "reasonable cause" to believe that a parolee has violated the terms of his parole. The Supreme Court has upheld the validity of similar state regulations. *See, e.g., Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). As a matter of law, then, Deardurff did not violate the Fourth Amendment when she arrested Coleman without a warrant, pursuant to Ohio Rev.Code § 2967.15, based upon her reasonable belief that a parole violation had occurred. *Id.; see also United States v. McCarty*, 82 F.3d 943, 947 (10th Cir. 1996) (recognizing that "a probation officer may search a probationer's home or even arrest a probationer without a warrant and with less than probable cause"). Accordingly, the record does not reflect a genuine issue of material fact regarding a violation of Coleman's Fourth Amendment rights by either Deardurff or Price.

## B. Fifth Amendment

Coleman alleges that Deardurff and Price violated his "right to be free from deprivation of his liberty without due process of law[.]"[7] (Doc. # 17 at ¶ 35). Al-

---

5. Coleman alleges a violation of these Amendments as they apply to the State of Ohio through the Fourteenth Amendment. (Doc. # 17 at ¶ 35).

6. In his Memorandum opposing summary judgment (Doc. # 39), Coleman has not disputed the Movants' characterization of the alleged *constitutional deprivations at issue.*

7. "The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Scott v. Clay County, Tennessee*, 205 F.3d 867, 873 n. 8 (6th Cir.2000). Given that the present case involves state actors, and not the federal government, Coleman's citation to the Due Process Clause of the Fifth Amendment is a "nullity." *Id.* For purposes of its

though the factual basis for this assertion has not been set forth in the amended Complaint, it is well settled that "[d]ue process protections apply to parole revocation proceedings because one has a liberty interest in parole." *Bennett v. Bogan*, 66 F.3d 812, 818 (6th Cir.1995) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). In *Morrissey*, the Supreme Court held that the Due Process Clause entitles a parolee to two parole revocation hearings. The first must be held promptly after arrest and detention for an alleged parole violation. It is a prompt " 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions[.]" *Id.* at 485, 92 S.Ct. 2593. The second hearing is a final revocation hearing, "lead[ing] to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation[.]" *Id.* at 488, 92 S.Ct. 2593.

■ Although the initial hearing may be informal, due process requires that the probable cause determination "be made by someone not directly involved in the case." *Id.* at 485, 92 S.Ct. 2593. In addition, due process requires that the parolee be given notice of the preliminary hearing, its purpose, and the alleged parole violations at issue. *Id.* at 486–487, 92 S.Ct. 2593. The parolee also has a due process right to speak, to present evidence and witnesses, and to confront and cross-examine adverse witnesses. *Id.* at 487, 92 S.Ct. 2593. Finally, the parolee has a due process right to be informed of the hearing officer's reasoning and the evidence relied upon to

support the probable cause determination. *Id.*

In support of their Motion for Summary Judgment, Deardurff and Price contend that Coleman's probable cause hearing included all of the foregoing procedural due process protections. In support of this contention, the Movants have presented evidence showing that Coleman received notice of the probable cause hearing, its purpose, and the nature of the alleged parole violations at issue. (Deardurff affidavit, attached to Doc. #33 at Exh. A, attachment 1). Coleman also was informed of his right to speak, to present evidence and witnesses, and to confront and cross-examine adverse witnesses. (*Id.*). After his probable cause hearing, Coleman received a written report, informing him of the hearing officer's reasoning and the evidence relied upon to support the probable cause determination. (*Id.* at attachment 3). Finally, the Court notes that the hearing officer who made the probable cause determination was someone other than Deardurff, who served as Coleman's parole officer and presented evidence at the hearing. (*Id.* at attachment 3; Deardurff affidavit at ¶9). As a result, the probable cause determination appears to have been made by an "independent decisionmaker," as required by *Morrissey*, 408 U.S. at 485–486, 92 S.Ct. 2593. In light of the foregoing evidence, which Coleman has not attempted to controvert, the record does not reflect a genuine issue of material fact regarding a violation of Coleman's due process rights by either Deardurff of Price.

■ Elsewhere in his amended Complaint, however, Coleman also alleges that Deardurff and Price violated unspecified "constitutional and civil rights" through

analysis herein, the Court will focus solely upon the Due Process Clause of the Four-

teenth Amendment.

their "unreasonable delay" in providing him with a parole revocation hearing. (Doc. # 17 at ¶ 31). Regardless of the unspecified constitutional right upon which Coleman relies, this claim fails, as a matter of law, because the record does not reflect any "unreasonable delay" attributable to either Deardurff or Price.

To the contrary, Deardurff first arrested Coleman on August 19, 1997. Thereafter, he promptly received a two-day probable cause hearing on September 3, 1997, and September 16, 1997. *Cf. Northington v. United States Parole Commission,* 587 F.2d 2, 3 (6th Cir.1978) (delay of 114 days not actionable, absent prejudice to the parolee). Coleman then was arrested a second time on February 19, 1999, for extradition to Texas. (Deardurff affidavit, attached to Doc. # 33 at Exh. A). Prior to his extradition, however, he was permitted to post bond, and he was released from the Montgomery County Jail on March 12, 1999. (Wagner depo. at 35). Thereafter, Coleman was taken into custody again on April 13, 1999, and he was picked up by Texas officials on April 22, 1999. (Wagner depo. at 37). The OAPA terminated its supervision over Coleman for the final time on April 28, 1999. (Deardurff affidavit, attached to Doc. # 33 at Exh. A). According to Coleman, the Texas Parole Board subsequently held his final revocation hearing on June 17, 1999. (Amended Complaint, Doc. # 17).

The foregoing facts, which Coleman has not disputed, demonstrate that he spent approximately four weeks in custody in Ohio, prior to his return to Texas. Assuming, purely arguendo, that this four-week delay is attributable to Deardurff or Price, it is not an "unreasonable delay," as a matter of law.[8] In *Mercer v. McAninch,* 178 F.3d 1295, 1999 WL 115497 (6th Cir. Feb.9, 1999) (unpublished), the Sixth Circuit explained that:

> ... [a] parolee charged with violating the conditions of his parole is entitled to a preliminary hearing and a final parole revocation hearing. *Morrissey v. Brewer,* 408 U.S. 471, 485–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The final revocation hearing must be held within a reasonable time. To determine whether a delay is unreasonable, the court must consider: (1) the length of the delay, (2) the reasons for the delay; (3) the alleged violator's attempts to assert the right, and (4) prejudice to the alleged violator.

*Id.* at *2 (citations omitted) (finding a four-month delay not unreasonable).

In the present case, the four-week delay at issue was not lengthy. In addition, this relatively brief delay occurred while Ohio officials waited for the State of Texas to pick up Coleman for extradition. (Deardurff affidavit, attached to Doc. # 33 at Exh. A). The record does not indicate that Coleman made any attempt, during the four-week delay, to assert his right to a final parole revocation hearing in Texas. Finally, the delay did not result in prejudice to Coleman. In order to show prejudice, Coleman must demonstrate that "the delay prevented his witness from testifying or that the testimony would have changed the outcome of the hearing." *Mercer,* 1999 WL 115497 at *2. In the present case, Coleman cannot possibly show such prejudice, because the hearing officer in Texas ultimately found *no violation* of the conditions of his parole. As a result, Coleman's parole was not revoked. (Amended Com-

---

8. Any delay that occurred *after* Coleman's return to Texas plainly cannot be attributed to Deardurff of Price. As noted above, the State of Ohio formally terminated its supervision over Coleman just days after his extradition.

plaint, Doc. # 17 at ¶ 17–18). In light of these uncontroverted facts, the Court finds no genuine issue of material fact with respect to Coleman's claim of "unreasonable delay."

### C. Sixth Amendment

Coleman alleges generally that Deardurff and Price deprived him of his Sixth Amendment right to the assistance of counsel. (Doc. # 17 at ¶ 35). In their Motion for Summary Judgment, however, Deardurff and Price note that Coleman was represented by counsel at both his September 3, 1997, and September 16, 1997, probable cause hearings. (Deardurff affidavit, attached to Doc. # 33 at Exh. A). In light of this uncontroverted evidence, the Court finds no violation of Coleman's Sixth Amendment right to counsel by either Deardurff or Price, as a matter of law.

### D. Ninth Amendment

Coleman next alleges that Deardurff and Price unlawfully invaded his privacy, in violation of the Ninth Amendment. (Doc. # 17 at ¶ 35). Although the factual basis for this allegation is unclear, the Court concludes that the Ninth Amendment does not support a § 1983 claim against Deardurff and Price, as a matter of law. The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The Sixth Circuit has recognized that this Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews,* 926 F.2d 532, 537 (6th Cir.1991). Consequently, the Ninth Amendment "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." *Strandberg v. City of*

*Helena,* 791 F.2d 744, 748 (9th Cir.1986) (concluding that an alleged violation of the Ninth Amendment will not support a claim under 42 U.S.C. § 1983); *Basile v. Elizabethtown Area School Dist.,* 61 F.Supp.2d 392, 403 (1999) (recognizing that a § 1983 claim cannot be premised upon an alleged violation of the Ninth Amendment). In light of the foregoing case law, the Court perceives no violation of Coleman's Ninth Amendment rights by either Deardurff or Price, as a matter of law.

Although Coleman has failed specifically to address any of the foregoing issues, he does insist that "there is a significant dispute as to material facts in this case." (Doc. # 39 at 3). In a two-page analysis, he first contends that the Movants' Memorandum refers to an irrelevant incident from 1993. The Court agrees that the 1993 incident is irrelevant. For that reason, it has not been mentioned or discussed herein. Coleman fails to recognize, however, that the inclusion of irrelevant information in a party's Memorandum does not establish a genuine issue of material fact for trial.

Coleman next contends that the record contains "not one shred of evidence" to suggest that Deardurff or Price "did anything pro-actively to unravel the comedy of errors surrounding [his] incarcerations, even though Ms. Price was aware of the problem." (*Id.*). The only specific "error" mentioned in Coleman's brief, however, involves the failure of either Deardurff or Price to arrest him immediately after his 1997 release from the Montgomery County Jail. Upon review, it is apparent that this purported "error" did not deprive Coleman of any constitutional right.

As set forth above, on December 11, 1997, Coleman was released from the Montgomery County Jail, where he had remained incarcerated following his proba-

ble cause hearing. (Deardurff affidavit, attached to Doc. # 33 at Exh. A). Coleman's release was ordered by the Montgomery County Common Pleas Court after Texas officials failed to extradite him. (Duibley depo. at 24). Shortly after Coleman's release from jail, Texas officials informed Deardurff that the State of Texas had issued a "pre-revocation warrant" on November 11, 1997. (Deardurff affidavit, attached to Doc. # 33 at Exh. A). After receiving this information, Deardurff consulted her supervisor and continued to monitor Coleman, but she did not re-arrest him. (*Id.*). As a result, Coleman remained free from custody until February 15, 1999, when Deardurff re-arrested him for extradition to Texas. (*Id.*).

In his Memorandum opposing summary judgment, Coleman now complains that Deardurff or Price should have taken him into custody *immediately* after learning of the 1997 "pre-revocation warrant" issued by the State of Texas.[9] In their reply Memorandum (Doc. # 42), the Movants contend that Deardurff's supervisor made the decision to keep Coleman on supervision rather than to arrest him immediately. (*See* Deardurff affidavit, attached to Doc. # 33 at Exh. A). Deardurff and Price also argue, *inter alia*, that the failure to re-arrest Coleman in December, 1997, did not violate any of his constitutional rights. Consequently, they reason that Coleman has not demonstrated a gen-

uine issue of material fact on his § 1983 claim.

 Upon review, the Court agrees that Coleman has failed to establish a genuine issue of material fact for trial. Most fundamentally, Coleman has not identified any constitutional right that Deardurff or Price violated by failing to arrest him on the Texas warrant. Assuming, purely arguendo, that one or both of the Movants acted improperly by not arresting Coleman from December 11, 1997, until February 15, 1999, the record is devoid of evidence suggesting that the act of allowing him to remain free violated his constitutional rights. The Court simply discerns no violation of the Constitution, based on the Movants' *failure* to deprive Coleman of his liberty.[10]

Notably absent from Coleman's Memorandum is a citation to evidence suggesting that he suffered prejudice as a result of being allowed to remain free until February 15, 1999. In *Bennett v. Bogan*, 66 F.3d 812, 818 (6th Cir.1995), the Sixth Circuit recognized that delay between the issuance and execution of a parole violator warrant does not constitute a due process violation, unless it results in prejudice to the parolee. The delay at issue in *Bennett* was more than five years. Absent prejudice to the parolee, however, the Sixth Circuit found no due process violation.[11] *Id.* at 818–819.

---

9. Although Coleman's Memorandum mentions both Deardurff and Price, he appears to recognize that Deardurff, his parole officer, would have been the individual responsible for arresting him. (Doc. # 39 at 4).

10. In *Moody v. Daggett*, 429 U.S. 78, 86–87, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Supreme Court held that the mere issuance of a parole violator warrant *does not infringe* upon a parolee's protected liberty interests. In reaching this conclusion, the Court reasoned that "the loss of liberty as a parole violator does not occur until the parolee is

taken into custody under the warrant." *Id.* at 87, 97 S.Ct. 274.

11. Similarly, in *Gaddy v. Michael*, 519 F.2d 669 (4th Cir.1975), upon which the *Bennett* court relied, the Fourth Circuit reasoned that the "[m]ere lapse of time or delay, particularly where the delay is in the execution of the warrant, without more, will no more violate the due process right of a parolee than will a delay of trial in the ordinary criminal case offend the 'speedy trial' provision of the Constitution[.]" *Id.* at 673.

In the present case, Coleman cannot possibly show prejudice of the type necessary to establish a due process violation. After his February 15, 1999, arrest and subsequent extradition to Texas, the Texas Board of Pardons and Parole conducted a final hearing and found no violation of the conditions of Coleman's parole. As a result, his parole was not revoked, and he was released from custody. (Amended Complaint, Doc. # 17 at ¶ 17–18). Under these circumstances, the Court concludes that the failure of Deardurff or Price to re-arrest Coleman in December, 1997, did not deprive him of his constitutional rights, as a matter of law.

In a final argument, Coleman asserts that the present litigation is, in essence, an "administrative *res ipsa loquitur* case in that [he] was injured by an instrumentality wh[ich] alone has the ability to explain how the injury occurred." (Doc. # 39 at 4). As a result, Coleman contends that summary judgment should not be entered against him, despite his inability to present evidence suggesting that Deardurff or Price deprived him of any constitutional right. (*Id.*).

Coleman's novel argument regarding "administrative *res ipsa loquitur*" is unsupported by the Sixth Circuit's § 1983 jurisprudence. It is well settled that "[a] successful § 1983 claimant must establish that the defendant acted knowingly or intentionally to violate his or her constitutional rights[.]" *Ahlers v. Schebil,* 188 F.3d 365, 373 (6th Cir.1999). Absent evidence establishing a genuine issue of material fact as to whether Deardurff or Price knowingly or intentionally violated Cole-

man's constitutional rights, he cannot avoid summary judgment. It is not enough for Coleman to insist that someone must have done something unconstitutional, as his "administrative *res ipsa loquitur*" argument suggests.

Based on the reasoning and citation of authority set forth above, the Motion for Summary Judgment filed by Defendants Wanda Deardurff and Gail Price (Doc. # 33) will be sustained, insofar as it relates to Coleman's § 1983 claim against the Movants in their individual capacity.[12] Construing the evidence and all reasonable inferences drawn therefrom in a light most favorable to Coleman, the Court finds no genuine issue of material fact precluding the entry of summary judgment against him on his § 1983 claim against Deardurff and Price in their individual capacity.

## IV. Analysis of Motion for Reconsideration (Doc. # 38)

Plaintiffs Steven and Janet Coleman seek reconsideration of the Court's July 24, 2000, Decision and Entry (Doc. # 37) sustaining a Rule 12(b)(2) Motion to Dismiss (Doc. # 6) filed by Defendants Ray Parra and John Claymon. In that ruling, the Court held that Parra and Claymon, who reside in Texas, are not amenable to suit under Ohio's long-arm statute.

In their Motion for Reconsideration, the Colemans do not address any aspect of the Court's eighteen-page Decision and Entry dismissing Parra and Claymon for lack of personal jurisdiction. Rather, in a half-page analysis, the Colemans cite additional evidence to support their assertion that personal jurisdiction exists.[13] *First,* they

---

12. Given that no genuine issue of material fact exists regarding the violation of Coleman's constitutional rights, the Court need not address the Movants' alternative argument regarding qualified immunity.

13. The materials attached to the Plaintiffs' Motion for Reconsideration have not been authenticated. The Court discerns no practical purpose in requiring the Plaintiffs to authenticate those materials, however, because the materials would not demonstrate

rely upon an interrogatory response in which Claymon stated, "There was then some confusion about whether Ohio was supervising Mr. Coleman." According to the Plaintiffs, this response suggests "that at least Mr. Claymon doesn't know what omissions he, or anybody else, made concerning Steve Coleman." *Second,* the Plaintiffs allege that Parra was in charge of Coleman's "personal file." *Third,* The Plaintiffs contend that someone signed an affidavit on behalf of Claymon. *Finally,* they argue that the dismissal of Parra and Claymon from this action "has for all practical purposes removed the possibility of Mr. Coleman ever addressing any possible remedy against the Texas officials who unconstitutionally restrained his freedom." (Doc. # 38 at 1).

 Upon review, the Court finds the Plaintiffs' Motion for Reconsideration to be unpersuasive. Claymon's interrogatory answer about "confusion" was part of his response to the following inquiry: "Briefly state why Steven W. Coleman's parole hearing was held on June 17, 1999, when his alleged parole violation occurred in August, 1997?" Claymon's general statement about "confusion" regarding Ohio's supervision of Coleman does not suggest the existence of long-arm jurisdiction under either Ohio Revised Code § 2307.382(A)(3) or (A)(6), the two provisions at issue. As the Court noted in its July 24, 2000, Decision and Entry, subsection (A)(6) applies when an out-of-state defendant, acting directly or through an agent, causes a tortious injury in Ohio by an act committed outside the state, provided that (1) the out-of-state act was committed with the purpose of inflicting an injury and (2) the injury was reasonably expected to occur. *Clark v. Connor,* 82 Ohio St.3d 309, 695

N.E.2d 751 (1998). In the present case, Claymon's statement about "confusion" regarding Ohio's supervision of Coleman suggests neither that Claymon (or his agents) committed an act with the purpose of injuring Coleman in Ohio nor that such an injury was reasonably expected to occur. Likewise, Claymon's statement does not satisfy the requirements of subsection (A)(3), which provides for long-arm jurisdiction over a non-resident defendant who, acting directly or through an agent, causes tortious injury in Ohio by an act or omission in this state. Claymon's interrogatory response does not mention any act or omission committed by him or his agents in Ohio to cause a tortious injury here.

 The Plaintiffs' other arguments are equally unavailing. The fact that Parra was "in charge" of Coleman's file in Texas is not surprising, given that Parra serves as the Administrator of the Interstate Compact for the State of Texas. The fact that Parra had ultimate supervision over Coleman's file does nothing to establish that Parra, acting directly or through an agent, committed any act or omission in Texas or Ohio that caused a tortious injury in Ohio. Likewise, the mere fact that someone once signed an affidavit on Claymon's behalf does nothing to establish that Claymon, acting directly or through an agent, committed any act or omission causing a tortious injury to Coleman. Finally, the dismissal of Parra and Claymon from this litigation does not deprive the Plaintiffs of a remedy against them. The Court's July 24, 2000, Decision and Entry means only that the Plaintiffs must seek their remedy in a court with personal jurisdiction over Parra and Claymon.

the existence of personal jurisdiction over Parra and Claymon, even if they were authen- ticated.

## V. Conclusion

Based on the reasoning and citation of authority set forth above, the Ohio Defendants' Motion for Summary Judgment (Doc. # 33) is sustained in part and overruled in part, as moot. The Motion is sustained, insofar as it seeks summary judgment on Steven Coleman's 42 U.S.C. § 1983 claim against Defendants Wanda Deardurff and Gail Price in their individual capacity.[14] The Motion is overruled, as moot, in all other respects. The Plaintiffs' Motion for Reconsideration (Doc. # 38) is overruled.

Judgment will be entered in favor of the Defendants and against the Plaintiffs.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

14. As noted, *supra*, the Court previously dismissed all other claims, including Plaintiff Janet Coleman's loss of consortium claim.